IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RAMIRO CERVANTES, #R-44942,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 16-cv-00754-NJR |
| ) | |
| **WEXFORD HEALTH SOURCE, INC.,** ) | |
| **LOUIS SCHICKER,** ) | |
| **VIPIN SHAH,** ) | |
| **MARK SCOTT,** ) | |
| **CHRISTINE BROWN,** ) | |
| **ANGEL RECTOR,** ) | |
| **MS. KELLEY,** ) | |
| **JACQUELINE LASHBROOK,** ) | |
| **THOMAS SPILLER,** ) | |
| **MICHAEL EDWARDS, and** ) | |
| **LARUE LOVE,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Ramiro Cervantes, an inmate who is currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), brings this *pro se* action for alleged violations of his constitutional rights under 42 U.S.C. § 1983 (Doc. 10). Cervantes's original complaint was dismissed for failure to state a claim, and he was simultaneously granted leave to file an amendment, which he did in a timely fashion (after the Court granted an extension of time to do so).

In his amended complaint, Cervantes raises a number of claims relating to the medical care he has received at Pinckneyville. He relies upon Section 1983, as well as the Americans with Disabilities Act (the "ADA"), in making his claims. In connection with his claims, Cervantes names Wexford Health Source, Inc., Vipin Shah (doctor), Mark Scott (doctor),

Christine Brown (health care unit administrator), Angel Rector (nurse), Jacqueline Lashbrook (warden), (First name unknown) Kelley (nurse), Thomas Spiller (warden), Michael Edwards (assistant warden of programs/ADA coordinator), and Larue Love (assistant warden of programs/ADA coordinator). He seeks monetary compensation and injunctive relief in the form of adequate medical treatment.

This case is now before the Court for a preliminary review of the amended complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

## The Amended Complaint

Cervantes alleges that on or about January 31, 2015, while he was at the health unit for his evening bath, he was forced to bathe using a gurney set-up, which was abnormal (Doc. 10 at 7). He alleges that the gurney set-up was used because the ADA coordinator—Defendant Edwards—had made some specific order about his contact with other inmates in the healthcare unit (*Id.* at 8). During his bath, nurses were not paying attention to him and were just standing around by the nursing station (*Id.* at 11). Specifically, he says Defendant Kelley and others did not keep a close enough watch on him (*Id.*). The odd set-up caused him to fall on the ground (*Id.* at 7). He suffered a sore wrist (his only functional wrist as he is paralyzed from the waist down and has no use of his right arm) and general malaise (*Id.* at 7-8, 11). Though he asked multiple individuals to address his pain, he did not get attention until approximately February 4, 2015, during a physical therapy call pass (*Id.* at 8).

Defendant Nurse Rector examined his wrist, saw bruising, and scheduled him for an x-ray (*Id.*). On February 9, 2015, Cervantes also verbalized his concerns about his wrist to Defendant Brown while Defendant Rector stood within earshot (*Id.* at 9). Brown allegedly admitted that the gurney set-up was dangerous (*Id.*). Rector contributed that the x-rays were negative for a fracture or break, though they did show arthritis (*Id.* at 9-10). At the same time, he complained that his catheter was past due for a change (*Id.*). Defendant Brown indicated that she would look into the issues (*Id.*).

The next day Cervantes asked Defendant Kelley about the catheter, and she informed him it had not yet arrived (*Id.* at 10). On February 12, 2015 (forty or more days after his last catheter change), Cervantes asserts that his catheter was changed (*Id.*). He claims that the untimely catheter change is an ongoing issue that has caused him to suffer a urinary tract infection ("UTI") in the past (*Id.* at 10-11).

Cervantes also claims that he should be allowed to shower on a daily basis, as opposed to only three times a week (*Id.* at 11-12). He insists that other ADA inmates are allowed to shower daily (*Id.*).

On April 14, 2015, Cervantes was seen by Defendant Dr. Shah for his wrist injury. (*Id.* at 12). He notified Dr. Shah that an earlier Tylenol prescription was ineffective to treat the pain (*Id.* at 12). Shah took no further steps (*Id.*). On the same date, Cervantes filed a grievance complaining of his wrist pain (*Id.*). After the grievance, the institution ordered him a wrist sleeve (*Id.*). Cervantes specifically contends that the delays in treating his wrist "could have worsened his current state of health (paralysis chest down)" (*Id.* at 13).

Rather than addressing his needs in a timely fashion, Cervantes contends that the entire Pinckneyville medical staff decided to take the "easier/cheaper route, but much less effective

course of treatment (Tylenol)" (*Id.* at 133). As a result of Defendants' conduct, Cervantes seeks monetary compensation and a declaration that Defendants acted inappropriately in violation of his constitutional rights (*Id.* at 15).

In a Memorandum of Law attached to his amended complaint, Cervantes asserts that he has objective evidence that he was given inadequate medical care and consequently suffered harm to his health and safety. (Doc. 10-1 at 2). He also contends that he has subjective evidence that Defendants acted with deliberate indifference and in furtherance of a custom or policy of providing inadequate medical care (*Id.*).

## Discussion

Based on the allegations, the Court finds it convenient to divide the *pro se* amended complaint into the following enumerated claims. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1:** Eighth Amendment deliberate indifference claim against Defendant Kelley for failing to properly supervise or assist Cervantes with his evening bath on or about January 31, 2015;

**Count 2:** Eighth Amendment deliberate indifference claim against Defendant Edwards for issuing a standing order that led to Cervantes having to use the gurney for a bath on January 31, 2015;

**Count 3:** Eighth Amendment deliberate indifference claim against Defendant Rector for failing to adequately respond to Cervantes's complaints about his wrist pain;

**Count 4:** Eighth Amendment deliberate indifference claim against Defendant Brown for failing to adequately address Cervantes's wrist pain and his need for a catheter change;

**Count 5:** Eighth Amendment failure to treat claim against Defendant Dr. Shah for failing to provide adequate treatment of Cervantes's wrist injury in April 2015; and

> **Count 6**: Eighth Amendment violative policy or custom claim against all medical defendants for electing to take the easier/cheaper course of treatment as opposed to the more effective course of treatment.

As a preliminary matter, Defendants Schicker, Scott, Lashbrook, Spiller, and Love will be dismissed without prejudice because Cervantes has not tied any of them to the harms he has alleged by specific and individual action or supervision. *See Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (Section 1983 liability is premised on individual liability of actors for acts they personally committed). Cervantes's original complaint was dismissed for this very defect. Merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.") Given the lack of particular allegations against these individuals, and the fact that Cervantes was previously warned of the consequences of such an infirmity, these defendants will be dismissed.

## Legal Standards

All of the claims in this action relate to allegations of deliberate indifference to a serious medical need, so the Court begins with a basic overview of applicable precedent. The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. U.S. CONST., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). Prison conditions that deprive inmates of basic human needs, such as inadequate nutrition, health, or safety, may constitute cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates deliberate indifference to the serious medical needs of an inmate. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Gutierrez v. Peters*, 111 F.3d

1364, 1369 (7th Cir. 1997). To establish deliberate indifference to a medical condition, a prisoner must show a condition that is sufficiently serious (objective component) and that an official acted with a sufficiently culpable state of mind in failing to address the condition (subjective component). *Id.* Whether an injury is serious enough is a very fact specific inquiry—seriousness may be shown if an ordinary doctor opined an injury warranted treatment, if an injury significantly impacted an individual's daily activities, or if an injury caused chronic or substantial pain, among other things. *Id.*

As to the subjective component, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002). If an official reasonably responds to a risk, even if harm was not averted, deliberate indifference does not exist. *Id.* A claim for medical negligence does not amount to deliberate indifference. *Gutierrez*, 111 F.3d at 1369. Additionally, a reasonable response differs depending on the capacity of the alleged wrongdoer. A non-medical prison employee—one who for example handles grievances, or supervises prison operations—will generally not be liable for deliberate indifference if he or she believes the prisoner is receiving adequate medical care, or takes steps to verify that the inmate is receiving care. *See Greeno v. Daley*, 414 F.3d 645, 655-57 (7th Cir. 2005). Individual liability may arise on behalf of a non-medical defendant, however, if the defendant is made aware of a specific constitutional violation via correspondence from the inmate, and the individual declines to take any action to address the situation. *See Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015). Simply put, a prison official may not escape liability by turning a blind eye to serious harms. *Id.* at 781 ("deliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or 'turns a blind eye'

to it"). At the screening stage of § 1915A review, the district court must consider if "discovery will shed light on whether [. . .] the grievance defendants took the needed action to investigate [a plaintiff's] grievances, and reasonably relied on the judgment of medical professionals" in responding to a given grievance. *Id.* at 782.

In a case where an inmate claims a delay in treatment as opposed to a total denial, the plaintiff must offer some evidence that the delay caused lasting harm. *See Conley v. Birch*, 796 F.3d 742, 749 (7th Cir. 2015) (finding that a plaintiff may be able to prove to a jury that a delay constituted deliberate indifference where the treating doctor testified that the bones in the hand would begin fusing quickly after an injury, and thus permanent damage may occur quickly). There is no bright line standard for how much of a delay is too much. There is also no bright line standard for how much care must be provided to avoid liability for deliberate indifference. A doctor or prison official is not required to follow every recommended course of care with precision, but ignoring recommendations of an outside provider may constitute deliberate indifference if doing so would result in the provision of such inadequate care that no reasonable medical official would agree with the course of action taken. *See Perez*, 792 F.3d at 778-79 (collecting cases) ("allegations that a prison official refused to follow the advice of a medical specialist for a non-medical reason may at times constitute deliberate indifference"); *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012) (stating that a prison doctor "is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards"). Although a prison official may not continue a course of treatment he knows is blatantly ineffective, prisoners are not entitled to receive unqualified access to healthcare. *See Holloway*, 700 F.3d at 1073-74. A doctor may

provide the care he feels is reasonable so long as it falls within a "range of acceptable courses based on prevailing standards in the field." *Id.* at 1073.

The viability of a Section 1983 claim turns in part on the nature of the alleged harm, in part on the role of the alleged actor, and in part on the type of relief sought. Section 1983 liability is premised primarily on individual liability of actors for harmful actions they personally took. Thus, to be liable under Section 1983 "an individual defendant must have caused or participated in a constitutional deprivation." *Pepper*, 430 F.3d at 810. Monetary damages may be awarded for individual capacity claims. *See id.*

The doctrine of *respondeat superior* does not apply to Section 1983 claims; thus, a defendant must be personally liable for the deprivation of a constitutional right. A defendant will be deemed to have sufficient personal responsibility if "he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Thus, a supervisor may be liable for deliberate, reckless indifference to the misconduct of subordinates if it can be shown that the supervisor knew about the conduct and facilitated it, approved it, condoned it, or turned a blind eye to it for fear of what they might see. *See id.* (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).

Objectively, Cervantes has identified two conditions that he alleges constitute serious medical conditions for the purpose of deliberate indifference. First, he alleges that the pain in his wrist was a serious and chronic condition after he fell and injured it. Second, he alleges that the risk of a UTI from infrequent changes of his catheter constituted a serious medical condition. Though a sore wrist may not always constitute a serious medical condition, in light of Cervantes's total body paralysis, his one functional wrist may be uniquely important to him. At

this preliminary screening stage, the Court will assume, without deciding, that the wrist injury was a serious medical condition. *See Gutierrez*, 111 F.3d at 1369 (noting that a condition that causes chronic pain could be sufficient to state a claim for deliberate indifference). As to the catheter concerns, having a catheter in and of itself is not a serious medical condition, but the infrequent changes and threats of persistent infection could constitute a serious condition. Accordingly, the Court will also assume, without deciding, that this condition is sufficiently serious to allow claims relying on the condition to proceed beyond screening. The subjective component of the deliberate indifference analysis will be conducted in turn with respect to each individual count, the involved defendants, and their alleged roles in providing care. *See Greeno*, 414 F.3d at 655-57.

*Count 1–Defendant Kelley's supervision of the January 31, 2015 shower*

Cervantes's claim against Defendant Kelley fails because he does not allege that Kelley intentionally put him in harm's way, and by contrast, he actually alleges that the on duty nurses that night believed he was not at risk by using the gurney set-up to take a bath. Taking Cervantes's own statement as true, that he was reassured the gurney was safe, he does not describe a set of facts whereby Kelley could or should have prevented his injury. Thus, Count 1 will be dismissed without prejudice as to Defendant Kelley.

*Count 2–Deliberate indifference or ADA violation by Defendant Edwards*

Here, Cervantes's fleeting mention of Defendant Edwards is insufficient to state a claim because it is unclear what he is claiming that Edwards did wrong. Two possible theories of relief come to mind: (1) deliberate indifference for establishing a policy or custom that required Cervantes to use the gurney set-up; or (2) a violation of the ADA for failing to make appropriate accommodations for Cervantes to take a shower. Though it is plausible that there could be a set

of facts which could support either of these theories, Cervantes has not set forth enough facts to support either theory at this juncture. A policy or custom claim would require a showing of conduct that was widespread and not just limited to Cervantes. His allegation is that he was specifically not allowed to change in rooms with other offenders, a fact that suggests the arrangement was not a policy or custom, but rather was an individualized condition. An ADA claim also is not apparent because Cervantes does not seem to allege that he was completely prevented from bathing, he merely alleges that it was made harder by the gurney. Accordingly, Count 2 against Defendant Edwards will be dismissed without prejudice.

*Count 3–Defendant Rector's response to Cervantes's wrist issue*

In Count 3, Cervantes alleges that Defendant Rector was deliberately indifferent in her response to his injured wrist, but the record does not suggest a plausible theory of deliberate indifference by Rector. Cervantes alleges that upon seeing his wrist, she sent him for x-rays. A few days after the x-rays, he was told by Rector in passing that the x-rays were all clear and that he merely suffered from arthritis. Cervantes makes no allegation that he further pursued or was denied treatment from Rector herself. The record also indicates that he received further care, seeing Dr. Shah on at least one (but probably more than one)[1] occasion. The Court finds that these facts do not suggest a viable claim for deliberate indifference against Defendant Rector. Thus, Count 3 will be dismissed without prejudice.

*Count 4–Deliberate indifference by Defendant Brown for failing to address the wrist/catheter*

Typically a prison official will not be held responsible for the direct provision of medical care; however, if an official is given clear and detailed notice of insufficient care and fails to take any action to address the situation, that official may be held liable for deliberate indifference. *See*

---

[1] Cervantes only gives the date of one specific visit, but he alleges that on that date he told Dr. Shah that Shah's previous prescription for Tylenol was not addressing his pain—so a fair reading of this allegation suggests that Cervantes saw Shah on multiple occasions (*See* Doc. 10 at 12).

*Perez,* 792 F.3d at 781-82. Here, taking Cervantes's allegations as true, he gave Brown verbal notice of his need for treatment of his wrist and for a new catheter. As to the wrist issue, there is no indication that Brown followed up on his complaints, though she likely did verbally hear from Defendant Rector that the x-rays of Cervantes's wrist were clear. It is a very close call whether she was deliberately indifferent to Cervantes's complaints about his wrist, but at this juncture the Court cannot say that his claim should not proceed. Thus, Count 4 will be allowed to proceed against Defendant Brown to develop a more comprehensive factual record about her response to Cervantes's wrist injury.

Though it is again a close call, the Court also will allow the claim about the catheter to proceed because the record suggests there was a delay in the provision of a new catheter, upwards of ten days, and that, at times, Cervantes has suffered UTIs as a result of such delay. The Court notes that not all delays in care warrant a finding of deliberate indifference and that, in order to establish deliberate indifference, a plaintiff must show that he suffered actual and lasting harm as a result of the delay. Here, Cervantes has proffered just enough information to proceed beyond screening on this claim.

*Count 5–Deliberate indifference by Dr. Shah for failing to adequately treat the wrist*

Like Count 4, Count 5 is a very close call. Prison care providers are not required to provide the *preferred* method of care, or the best method of care; they are simply required to provide a level of care that is professionally reasonable. *See Holloway,* 700 F.3d at 1074. Marginal delays in the provision of care are likewise not grounds for deliberate indifference. *See Conley,* 796 F.3d at 749. Here, Cervantes has alleged that Shah did not immediately respond to his allegations that Tylenol was insufficient, and that it was not until Cervantes grieved his pain (after an April 2015 appointment) that he received a wrist sleeve. Dr. Shah was free to select a

professionally reasonable course of care, and some delays in finding the appropriate treatment could be excusable. The Court notes, however, that in support of Cervantes's theory of delay, the alleged wrist injury took place in January 2015 while a sleeve was not ordered until he submitted a threatening grievance in April 2015.[2] It is plausible that such a delay or such a course of treatment may be professionally lacking. Without passing on the merits of this issue, the Court will allow this claim to proceed beyond screening for development of a more comprehensive factual record.

*Count 6–Deliberate indifference or violative custom or policy claim against all defendants*

As stated above, the individually named defendants that were not specifically tied to actions in the amended complaint are being dismissed without prejudice (Shicker, Scott, Brown, Lashbrook, Spiller, and Love). Defendants Kelley, Edwards, and Rector were also dismissed for their seemingly minimal or legally insignificant roles in the harms alleged. Given the paucity of evidence about these individuals, the conduct alleged on their behalf also does not exhibit signs of a problematic custom or policy. Thus, the Court will only consider the custom or policy claim as it pertains to Defendants Brown, Shah, and Wexford Health Source, Inc.

The Seventh Circuit recently commented upon the difficulty of proving an official policy or custom of providing inadequate medical care in its *Daniel* decision. *See e.g. Daniel v. Cook Cnty.,* 833 F.3d 728, 733-36 (7th Cir. 2016) (noting the difficulty of proving a policy or custom of providing inadequate medical care and finding that the defendant had proffered sufficient evidence to survive summary judgment); *Perez*, 792 F.3d at 780 (allowing a harmful policy claim to proceed against Wexford for nurse's alleged refusal to perform sutures, and for allegation that Wexford refused to maintain a staff doctor at a prison facility). The plaintiff in

---

[2] Cervantes appended a grievance dated April 15, 2015, in which he accused the institution of deliberate indifference for Dr. Shah's provision of medical care (Doc. 10-1 at 8-9). The attached appeals forms indicate that the institution deemed the medical issue appropriate addressed—noting that a wrist sleeve had been ordered (Doc. 10-1 at 10-11).

*Daniel* alleged a violation of his rights under Section 1983 via a policy or custom that led to inadequate scheduling of medical appointments, inadequate record keeping, and inadequate responses to medical grievances. 833 F.3d at 733-36. As a result of the alleged policy-based practices, the plaintiff claimed that he suffered permanent disfiguration and disability in his hand because the defendants failed to schedule him for follow-up appointments to have a cast removed and to participate in physical therapy. *Id.* The plaintiff in *Daniel* did not attempt to name individual defendants. *Id.* The Seventh Circuit noted that Daniel was effectively prevented from naming individual defendants or making a clear policy or custom based claim because the institutional structure of medical care prevented him from frequently seeing the same provider or establishing continuity of care sufficient to show that the care was inadequate. *Id.* In light of the difficulties Daniel faced in stating a succinct claim, and in light of the factual assertions he made about his own experiences as well as the care at the facility, the Seventh Circuit found that he had proferred enough evidence on a custom or policy to proceed beyond summary judgment. *Id.*

Here, Cervantes's allegations are not clear on the point of a violative custom or policy. He did allege that the medical care providers prefer to save money over taking the 'preferred' method of treatment—but this does not necessarily insinuate that the care is wholly inadequate or that there is an overarching agreement about how to provide such deficient care. Moreover, the overall tenor of Cervantes's factual assertions suggests that care providers were responsive to his needs. Two grievances (dated February 26, 2016 and April 15, 2016) include responses by reviewing officials indicating that his needs had been met by further treatment such as the ordering of a wrist sleeve. What is more, Cervantes does not allege that he has suffered permanent harm as a result of a policy or custom. Instead he alleges that he "could have" suffered permanent consequences.

Cervantes also has not made any allegation that Brown or Shah personally participated in creating a custom or policy of providing insufficient care. At most, Cervantes alleges that Brown did not quickly respond to his oral grievances and that Shah first resorted to cheap treatment. Cervantes appears to attempt to tie these incidents to the allegation that all medical staff provide cheaper or less effective treatment, rather than the preferred treatment, but he does not identify an explicit policy, nor does he allege a widespread and systemic continuation of such a problem. As to Wexford, Cervantes appears to lump them into his custom or policy theory by discussing the medical unit at large, but such a passing reference is not sufficient to suggest a policy or custom in accord with the legal standards set forth above. In light of the bare nature of the policy or custom allegations, and the lack of permanent harm, Count 6 will be dismissed without prejudice.

## Pending Motions

Cervantes has filed Motions for Recruitment of Counsel (Doc. 3, 13), which shall be **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for a decision.

Cervantes's second Motion for Leave to Proceed *In Forma Pauperis* (Doc. 11) is **DENIED** because it is duplicative of his earlier motion (Doc. 2), which was already granted.

Because service of process is ordered below as to some defendants, the Motions for Service of Process at Government Expense (Docs. 4, 12) are **GRANTED in part**.

## Disposition

**IT IS ORDERED** that this action shall receive further review as to **DEFENDANTS BROWN (COUNT 4) and SHAH (COUNT 5)**. The amended complaint shall be **DISMISSED without prejudice** as to **DEFENDANTS WEXFORD HEALTH SOURCE, INC., SCHICKER, SCOTT, LASHBROOK, SPILLER, LOVE, KELLEY, EDWARDS, and RECTOR** for failure to state a claim. The **DISMISSAL** encompasses **COUNTS 1, 2, 3, and 6**.

The Clerk of Court shall prepare for **DEFENDANTS BROWN (Count 4) and SHAH (Count 5)**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the amended complaint, and this Memorandum and Order to each defendant's place of employment as identified by Cervantes. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Cervantes, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Cervantes shall serve upon defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Cervantes shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the amended complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Cervantes, and the judgment includes the payment of costs under § 1915, Cervantes will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Cervantes is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Cervantes is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

IT IS SO ORDERED.

DATED:  November 29, 2016

                                                                               *Nancy J. Rosenstengel*
                                                                               **NANCY J. ROSENSTENGEL**
                                                                               **United States District Judge**